UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BELMERE, L.P.                                            CIVIL ACTION

VERSUS                                                  NO: 22-2689

STEADFAST INSURANCE COMPANY                             SECTION: "A" (4)

## ORDER AND REASONS

Before the Court is a **Motion *in Limine* to Exclude Experts Byron Earls and Christopher Lipp (Rec. Doc. 51)**, filed by Defendant Steadfast Insurance Company ("Steadfast") and opposed by the plaintiff, Belmere, L.P. ("Belmere").[1] This order and reasons assumes familiarity with this first-party insurance case and recounts only those facts strictly necessary to resolve the pending motion. In short: the case arises from Belmere's claim that Steadfast failed to timely and adequately pay it proceeds due under its commercial lines policy after Belmere invested $26 million of its own funds to repair a 249-unit apartment complex in Houma, Louisiana that it alleges suffered "catastrophic damage" during Hurricane Ida.[2] Through its lawsuit, Belmere seeks (i) additional coverage under its policy with Steadfast, and (ii) penalties, attorneys' fees, and interest for Steadfast's alleged bad faith. *See* La. R.S. 22:1892 and 22:1973.

A five-day jury trial is set to start on Monday, July 28, 2025. Ahead of the trial, Steadfast filed a Motion for Partial Summary Judgment on Plaintiff's Claims for Bad Faith Damages (Rec. Doc. 50)[3] and the present motion in limine seeking to exclude certain expert witnesses. For the following reasons, the motion is granted in-part and denied in-part.

---

[1] The motion, noticed for submission on May 28, 2025, is considered on the briefs and without oral argument.

[2] Rec. Doc. 55, at 1.

[3] The Court will consider the motion for summary judgment in a separate order and reasons.

## I.    Legal Standard

Under Federal Rule of Evidence 402, "irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant, however, "the court may exclude [it] if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Therefore, evidence must both be relevant and overcome any potential prejudicial influence on the jury to survive this motion in limine.

Expert testimony may likewise be excluded under Federal Rule of Evidence 702, which governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court explained that trial courts must act as "gatekeepers" for the admissibility of expert testimony. In doing so, district courts must make a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592. This requires courts to

engage in the so-called *Daubert* test, a two-prong inquiry requiring the court to first establish "that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). If an expert is deemed qualified, the court must then ensure the expert's proffered testimony is relevant and reliable. *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702(a)).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Additionally, motion in limine rulings "are not binding on the trial judge . . . and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce v. United States*, 469 U.S. 38, 41–42 (1984)).

## II.    Pending Motion

The pending motion challenges the admissibility of the expert testimonies of Mr. Byron Earls and Mr. Christopher Lipp.[4] According to his report, Mr. Earls was retained by Belmere to (i) "investigate the scope of completed repairs based on information provided"; (ii) "[g]enerate comparative estimates for typical building types"; and (iii) "[g]enerate a report providing an

---

[4] Rec. Doc. 51.

opinion on the projected measurement of loss based on extenuating circumstance[s] after the event."[5]

Mr. Lipp, on the other hand, was retained to provide a "technical assessment of the exterior building envelope components inclusive of the roof, exterior walls and windows" with a focus "on the severity of the impacts of water intrusion sustained at Belmere, and its need to replace building materials that were ruined after becoming wet."[6] At his deposition, he further testified that the purpose of his involvement was to "take a look at the documentation that was presented from others . . . and generally opine on the condition of the exterior wall construction" with a specific focus on the wall's exterior sheathing.[7]

As it concerns Mr. Earls' expert testimony, Steadfast makes the following contentions: (i) his methodology is insufficient to meet *Daubert* standards for reliability and will otherwise result in jury confusion; (ii) his expert report fails to address causation; and (iii) his testimony is irrelevant to determining the alleged cost of repairs, which will result in jury confusion.[8] Steadfast contends that Mr. Lipp should be excluded for the same reasons.[9]

Regarding its *first* contention, Steadfast argues that "while [Mr. Earls] generally claims to have generated his scope of repairs based on the photographs he reviewed and his inspection of the Property," the scope of his testimony is more predominately based on (a) his interview with Belmere and its site superintendent, and (b) his review of post-loss photographs based on the information provided to him by the site superintendent.[10] Regarding its *second* contention,

---

[5] Rec. Doc. 51-3, Earls Report, at 19.

[6] Rec. Doc. 55, at 9.

[7] Rec. Doc. 51-5, Lipp Dep., 28:8–15.

[8] *See* Rec. Doc. 51-1, at 9–10, 14–15.

[9] Rec. Doc. 51-1, at 15.

[10] Rec. Doc. 51-1, at 7–8.

Steadfast argues that Mr. Earls included any damage he observed in photos in his report without taking into consideration whether the alleged conditions occurred as a result of Hurricane Ida or "attempt[ing] to segregate the damages from those caused by an isolated weather event (*i.e.*, Hurricane Ida) versus those caused by [various other events]."[11] Regarding its *third* contention, Steadfast argues that the estimates contained in Mr. Earls' report are not probative to the factfinder's duty because they concern repairs that have already been made.[12]

As it relates to Mr. Lipp, Steadfast contends in brief fashion that his testimony should be excluded for the following three reasons: (i) he did not inspect the property; (ii) he did not provide any opinion on the issue of causation of the alleged damages or the sufficiency of the repairs; and (iii) his "expert report and associated opinions rely heavily on the flawed, irrelevant, and unreliable opinions included in [Mr. Earls'] report."[13]

In opposition, Belmere principally asserts that the Court should deny Steadfast's motion because its "arguments go to the weight of Earls' and Lipp's opinion testimony, not admissibility."[14] The Court addresses the relevant points of Belmere's opposition in the paragraphs that follow.

### III.    Analysis

As previously discussed, the guiding principles of expert witness admissibility require that courts first consider whether a witness is qualified, *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 799 (E.D. La. 2011) (Fallon, J.), and, if so, they next consider whether the proffered testimony is relevant and reliable. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

---

[11] Rec. Doc. 51-1, at 9.

[12] Rec. Doc. 51-1, at 14.

[13] Rec. Doc. 51-1, at 16.

[14] Rec. Doc. 55, at 1.

As a threshold matter, Steadfast's motion is denied to the extent it seeks to exclude Mr. Lipp's testimony because (i) Lipp is qualified to render an opinion on his respective subject matter, and (ii) Steadfast has otherwise failed to provide the Court with enough analysis on the issue to make a ruling.[15] Accordingly, the remaining analysis concerns only the testimony of Mr. Earls.

Trial courts may exercise wide-ranging discretion when determining whether a particular witness qualifies as an expert; and under Rule 702, an expert is not viewed in a narrow sense, but as a person qualified by knowledge, skill, experience, training or education. *Wagoner*, 813 F. Supp. 2d at 798. For the reasons stated in its opposition, the Court finds that Belmere has established that Mr. Earls possesses the requisite qualifications to render an opinion on his respective subject matter.[16]

**The Earls Report is irrelevant and therefore must be excluded.**

"[E]xpert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citation omitted). Steadfast asserts the Earls Report is irrelevant to determining the alleged cost of repairs and, because of this, it will serve to unduly prejudice Steadfast or result in jury confusion.[17] The Court agrees.

In support of its assertion, Steadfast argues that "[e]xperts are strictly prohibited from testifying on property damage repaired prior to their inspection," and notes that "[t]his Court has

---

[15] *See* Rec. Doc. 55, at 11–12.

[16] Mr. Earls' qualifications include his degree in construction management and his 30 years of experience working in construction. This experience includes commercial and residential construction, independent adjusting, engineering and building consulting, and expert witness testimony in the fields of construction consulting and construction damage estimating. *See* Rec. Doc. 55, at 3–4.

[17] Rec. Doc. 51-1, at 15.

repeatedly held that estimates of the cost of repairs that are completed after the repairs themselves are done are inadmissible."[18] In opposition, Belmere expressly states that "[it] will not use Earls to establish the measure of its damages (which are established by its own out-of-pocket costs)," but instead intends to use him to "address one of Steadfast's primary defenses: that the costs incurred by Belmere are somehow excessive or relate to betterments."[19]

Under Louisiana law,[20] a plaintiff must provide the best evidence in support of his claim. *Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151, 1169 (5th Cir. 1983). The Fifth Circuit has explained that:

> Damages may be predicated on estimation only when the loss has not been repaired. If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill.

*Id.* (quoting *Lambert v. Allstate Ins. Co.*, 195 So.2d 698, 700 (La. Ct. App. 1st Cir. 1967)). Here, Belmere concedes that Mr. Earls' testimony will not be used to establish the measure of its damages—"which are established by its own out-of-pocket costs"; accordingly, Steadfast's motion is granted to the extent that it seeks to exclude testimony or any part of the Earls report that estimates damages that have already been established by Belmere's "repair bill." *Id.*; *see also Buller v. Am. Nat'l Prop. & Cas. Cos., et al.*, 2002-820 (La.App. 3 Cir. 2/5/03), 838 So.2d 67, 73 ("[I]t is well settled that the measure of damage is the cost of restoring the property to its former condition.").

As for the use of Mr. Earls' testimony proffered in Belmere's opposition, the Court finds that it may be relevant for the purpose of rebutting an assertion by Steadfast that specific repair

---

[18] Rec. Doc. 51-1, at 14.

[19] Rec. Doc. 55, at 8.

[20] Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991).

costs were excessive or that the property was not restored using like-kind and like-quality materials (as such uses would tend to make the excessive nature of the costs or their relation to a betterment more or less probable than without the testimony, Fed. R. Evid. 401); but, in its current form, the "proposed opinion [does not] assist the trier of fact to understand or determine a fact in issue." *Bocanegra*, 320 F.3d at 584.

For example, page 4 of the report contains a table that presents the "[t]otal repair estimated cost" of each building type broken down by the per-square-foot cost of each building.[21] It incorporates by reference documents from the original construction of the apartments in 2009, but the table itself is simply an estimate of repair costs generated with the help of Xactimate (an industry standard software).[22] And although his report states that the "estimates were generated for comparative analysis," such analysis is absent from its face.[23] This is bolstered by Mr. Earls' admission that the data underlying his estimates did not include repair invoices.[24] In other words, Mr. Earls' conclusions are based on data that is wholly irrelevant to the actual repair costs, which is the best evidence in the case, and without which there can be no "comparative analysis."

It is axiomatic that the opinion of an expert called for the purposes of (i) establishing the reasonable nature of certain repair costs and/or (ii) that the repairs do not amount to a betterment, would take such repair costs into consideration when opining on the issue.[25] *See* Fed. R. Evid. 702

---

[21] Rec. Doc. 55-1, at ECF p. 6.

[22] Rec. Doc. 55-1, at ECF p. 6.

[23] Rec. Doc. 55-1, at ECF p. 7.

[24] Rec. Doc. 55-1, at ECF p. 6; Rec. Doc. 51-2, at ECF p. 12 ("Ultimately, our numbers weren't based on the invoices. They were based on our opinion of what we believed it would have cost to put them back like they were.").

[25] The parties are reminded that this Court, like others in this District, allows an expert to testify only as to the four corners of his report. *See, e.g., Fairley v. ART Catering, Inc.*, No. 16-3488, 2018 WL 7288521, at *1 n.1 (E.D. La. Sept. 27, 2018) (Zainey, J.); *Smith-Jordan v. Love*, No. 19-14699, 2022 WL 226513, at *7 (E.D. La. Jan. 26, 2022) (Milazzo, J.); *Magee v. Florida Marine, LLC*, No. 22-3835, 2024 WL 3457604, at *6–7 (E.D. La. July 18, 2024) (Papillion, J.).

("[A] witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data . . . ."). To allow otherwise would substantially increase the propensity that a jury is misled or becomes confused. Fed. R. Evid. 403. Because the report relies on the damage calculations contained on page 4, the irrelevancy finding extends to the report as a whole.[26]

Accordingly;

**IT IS ORDERED** that Steadfast's **Motion *in Limine* to Exclude Experts Byron Earls and Christopher Lipp (Rec. Doc. 51)** is **GRANTED in-part** and **DENIED in-part.**

As it relates to the testimony and report of Byron Earls, Steadfast's motion is **GRANTED** to the extent that it seeks to exclude testimony or any part of the Earls report that estimates damages that have already been established by actual costs. If Steadfast presents an argument that the costs incurred by Belmere are somehow excessive or relate to betterments, the Court will allow Mr. Earls to opine in general terms (i) as to the reasonable nature of the actual costs or (ii) for the purpose of rebutting the contention that the costs amounted to betterments. As to the reasonable nature of the amount paid by Plaintiff, in no event will the expert state the specific amount of his estimate; merely that he estimated the amount of damages to be greater than the amount paid by Plaintiff. **If, however,** Steadfast stipulates that the actual costs were not excessive or do not relate

---

[26] *See* Rec. Doc. 55-1, at ECF p. 2 ("Conclusions"),

> YA generated comparative estimates (see exhibit A) for Building I, II & VI (types), Garage & the Clubhouse. After completion of these estimates, YA utilized the cost per square foot for each type of structure to determine an overall comparative number. This per square foot number was then used to establish the estimated cost to bring the entire complex back to its pre-loss condition. As shown in the tables above the total estimated cost of repairs per YA's analysis is $29,732,625.00. YA's estimates were generated for comparative analysis and are based upon site observations, information provided by the insured and gleaned from Sedgwick Report Number 1 (see Exhibit D). YA also utilized information provided in original construction documents.

to betterments, then Mr. Earls' limited testimony will not be permitted as to the stipulated subject matter.

As it relates to the testimony and report of Christopher Lipp, Steadfast's motion is **GRANTED in-part** and **DENIED in-part.** It is **GRANTED** to the extent it seeks to exclude any part of Mr. Lipp's report (or any testimony) that relies on the Earls Report. It is **DENIED** in all other respects. The Court notes that Mr. Lipp will be subject to "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

June 30, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE